## Appeals of Fuchs

*Stuart A. Culbertson*, for Commonwealth.

*Francis J. Fornelli*, for defendants.

STRANAHAN, P. J., July 24, 1974.—These four cases come before the court as appeals from revocation of operating privileges pursuant to the Act of April 29, 1959, P. L. 58, sec. 616(a)(4), as amended, 75 PS §616(a)(4).

The Secretary of Transportation is authorized by 75 PS §616(a), upon receiving from the clerk of

courts a certified record of the proceedings, to revoke for one year the operating privileges of any individual if that person has plead guilty, entered a plea of nolo contendere, or was found guilty of certain enumerated offenses.

Subsection (a) (4) authorizes revocation for:

"Operating or controlling the operation of a motor vehicle while in unlawful possession of any controlled substance as defined in 'The Controlled Substance, Drug, Device and Cosmetic Act' or utilizing a motor vehicle in the unlawful transportation or the unlawful sale of any controlled substance as defined in 'The Controlled Substance, Drug, Device and Cosmetic Act'."

In all four cases presently before the court the appellants have plead guilty to unlawful delivery of a controlled substance and have all received revocation notices from the Bureau of Traffic Safety of the Department of Transportation indicating that the revocation is based upon 75 PS §616(a)(4). It is their contention that the narcotics investigator's report, which allegedly connects the use of an automobile to the substantive criminal violation, is inadmissible hearsay. The appellants also contend that no automobile was "utilized" in their unlawful sales of a controlled substance within the meaning of section 616(a)(4) and thus the revocation was unwarranted.

It is the position of the Commonwealth that the narcotic investigator's reports of Special Investigator H. B. Schuman are certified by the Secretary of Transportation and, as such, are admissible by virtue of the Act of April 29, 1959, P. L. 58, sec. 1224, 75 PS §1224.

Initially, the origin of these reports should be noted. Apparently, the Department of Transportation, upon receiving a certified record of the proceedings from the clerk of courts, periodically dispatches an investi-

gator to determine if an automobile was utilized in the commission of the offense, in these cases, the delivery of a controlled substance. His opinion is noted on this report and returned to the department. There is absolutely no indication in the reports what sources he draws upon in making this determination.

Thus, this report, standing alone, clearly constitutes hearsay and is inadmissible. The conclusion the investigator makes in the report is introduced to prove the truth of the statement, not merely to prove the fact that the investigator made the statement.

It is true that by virtue of 75 PS §1224 certified copies of the secretary's records, paper, etc., are deemed admissible with the same force and effort as the originals. However, the certified copy is admissible only in "cases where such original records, books, papers, documents, . . . would be admitted in evidence." Thus, the certified copy of the narcotics investigator's report stands on no better ground than the original.

The distinction between records and copies thereof and the mere certification by a public official as to the contents of records is recognized in Commonwealth v. Rushing, 10 Chester 467, 28 D. & C. 2d 134 (1962). In that case, the Commonwealth attempted to introduce the certification of the Director of Enforcement that no restoration of appellant's license was made by the Secretary of Revenue. The court held the director's certification inadmissible and section 1224 inapplicable. In so doing, the court stated:

"The certificate offered and admitted is no more or less than the opinion of the Director of Enforcement as to what he believes the record to show in certain respects and clearly comes within the above prohibition and therefore is inadmissible. He expressly

avers that its content is a conclusion from a 'search' of the files and does not purport to be an original record or copy thereof. We find no regulatory or statutory authority to empower such a certificate to be made or to validate it as admissible evidence": 28 D. & C. 142; 10 Chester 472.

Similarly here, the narcotic investigator's reports are nothing more than Mr. Schuman's opinion that an automobile was utilized in the commission which renders such hearsay admissible, the reports cannot be considered.

The second issue confronting the court is what constitutes utilization of a motor vehicle in the unlawful sale of a controlled substance within the meaning of 75 PS §616(a)(4).

Only in the case of appellant Glaser is there any evidence that an automobile was at all involved. At the Glaser hearing, a police officer testified that the appellant sold him marihuana. The testimony indicates that a third person asked the officer if he wished to purchase a lid to which the officer replied affirmatively. He was directed to the appellant who took him to his car. They entered the automobile and the appellant removed a bag from the glove compartment and sold it to the officer. They then returned to the pool hall.

On appeal from an operator's license suspension the court is to conduct a hearing de novo, making independent findings of fact, and the Commonwealth must prove the basis for the suspension by a preponderance of the evidence. Commonwealth v. Critchfield, 9 Pa. Commonwealth Ct. 349, 305 A. 2d 748 (1973).

Unfortunately there is no appellate court opinion interpreting the requirement of "operating" "controlling" or "utilizing" a motor vehicle as used in 75

PS §616(a)(4). However, the Commonwealth Court has had occasion to interpret the meaning of subsection (a)(2) of section 616 which authorizes revocation for "any . . . felony in the commission of which a motor vehicle or tractor is used". Commonwealth v. Denham, 12 Pa. Commonwealth Ct. 593, 317 A.2d 328 (1974). The court there points out those sections of the Vehicle Code requiring use of an automobile in the commission of a crime for revocation have been held to require that the use be "reasonably and integrally related to the proscribed conduct." The court elaborates by quoting from its earlier decision in Commonwealth v. Critchfield, 9 Pa. Commonwealth Ct. 349, 305 A.2d 748 (1973), as follows:

" 'The cases on the subject generally require that the misdemeanor . . . must have some reasonable relation to the *operation* of the motor vehicle, and the *use* of the motor vehicle must contribute in some reasonable degree as opposed to being merely incidental to the commission of the crime.' " Commonwealth v. Denham, supra 596. (Emphasis the Courts' ).

Here there is no evidence that the appellant Glaser operated the motor vehicle at all, yet alone in connection with the commission of the crime. Generally courts have not found that an automobile was so used unless it is actually driven: Grohotolski License, 31 D. & C. 2d 789 (1963); Olmstead License, 29 D. & C. 2d 50 (1962). Thus it has been held that the theft of hubcaps was not sufficient use for purposes of revocation: Commonwealth v. Werry, 29 D. & C. 2d 756 (1962). Thus similarly here, the use of the glove compartment for the storage of the marijuana was only incidental and not integrally related to the crime of unlawful delivery of a controlled substance.

## ORDER

And now, July 24, 1974, the appeals of the petitioners are sustained and the order of the Department of Transportation suspending the licenses of the petitioners for a period of one year is reversed.